(No. 3405—

R. C. ENGLISH, AN INDIVIDUAL, TRADING UNDER THE STYLE OF ENGLISH BROTHERS, Claimant vs. STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1943.*

GOTTLIEB & SCHWARTZ, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

FISHER, J.

Claim for $119,709.04 was filed August 31, 1939, for loss and damage sustained by claimant under contract dated December 20, 1933, with respondent through the Department of Public Works and Buildings.

The record consists of the verified complaint, transcript of evidence, report of Division of Architecture and Engineering, by J. H. Stockmar, Architectural Assistant, and similar report by Bryant E. Hadley (signed B.E.H.), Architectural Assistant, Division of Architecture and Engineering, and stipulation by Gottlieb and Schwartz for claimant and George F. Barrett, Attorney General, for respondent.

Claimant alleges:

That on December 20, 1933, he entered into a contract with respondent for the general construction of buildings at Manteno, Illinois, consisting of Male and Female Ward Buildings, Connecting Dining Room Buildings, General Stores Buildings, Laundry Building, Hospital Building and Kitchen Building, Manteno State Hospital, Manteno, Illinois.

That the contractor agreed to and did provide the necessary labor and materials for the said buildings and did construct the same in accordance with the contract.

That the said contract provided that the general conditions of the contract should include, as a part of the contract, the general information and instructions for contractors estimating work for the Manteno State Hospital dated November 4, 1933, as amended, and the contract provisions issued by the Federal Emergency Administration of Public Works.

That the said general information and instructions for contractors estimating work provided that the prevailing rate of skilled labor was $1.20 and unskilled labor $.50 per hour, respectively.

That the said contract, by incorporating the general instructions for contractors, provided that the wage rate was subject to change by the Federal Emergency Administration of Public Works, and upon such change the contract price should be adjusted accordingly on the basis of all actual labor costs on the project to the contractor.

That work pursuant to said contract was started and claimant paid his employees at the prevailing rate of $.50 per hour for unskilled labor and $1.20 per hour for skilled labor as provided in the said contract.

That on or about January, 1934, the Federal Emergency Administration of Public Works made a finding that the prevailing wages at Manteno, Illinois, were $1.25 per hour for skilled labor and $.55 per hour for unskilled labor and claimant was forced, over his protest, to meet the increased cost of labor.

That the Supervising Architect of the Department of Public Works of the State of Illinois requested and directed claimant to meet the increased wage scale in order that the Federal grant to the State of Illinois would not be jeopardized or withdrawn, and advised claimant that any failure so to do would be considered a breach of claimant's contract. The State Superintendent of Public Works Administration also advised claimant that unless the increased wage scale was met, the Federal grant to the State of Illinois would be jeopardized or withdrawn and directed claimant to comply with the said wage scale.

That on or about April, 1934, additional increases in wage scales of certain classes of labor were made under similar circumstances.

That, as a result of such increases, additional labor costs were sustained by claimant to the extent of $31,391.69.

The transcript of evidence contains the testimony of R. C. English, contractor, and J. H. Stockmar, Architectural Assistant, which sustains the claim of $31,391.69 for additional labor costs and, claimant, by stipulation, waives all other claim for damages.

The report of the Division of Architecture and Engineering, by J. H. Stockmar, Architectural Assistant, and Bryant E. Hadley, Architectural Assistant, in reviewing the entire claim states, in part, as follows:

"In paragraph 3 the claimant states that pursuant to the contract date he had paid unskilled labor 50c per hour, and skilled labor $1.20 per hour. The claimant further states that those were the rates of wages provided in the General Specifications issued by this department pursuant to the contract date, December 20, 1933. Our records show that this is a correct statement. The claimant further states that on or about January, 1934, Mr. B. M. Marshman, Labor Conciliator for PWA, made a finding that the prevailing wages in the region around Manteno, were 55c per hour for unskilled labor, and $1.25 per hour for skilled labor. The writer recalls the incident, and our records indicate that that was the situation. The writer recalls meeting with the contractor and PWA representatives at Manteno, and also in Chicago at Mr. Marshman's office, for the reason that English Brothers at that time protested on the basis that to the best of their knowledge the prevail-

ing wages in that locality had never exceeded the maximum of 50c and $1.20 respectively. This office, therefore, must acknowledge that English Brothers did protest at that time, inasmuch as they stated they had not figured in their estimate to pay more than the wages as stated by this department in the general information and instructions to contractors, Exhibit B, (which documents were approved prior to release, by PWA), and claimed by the claimant to be prevailing at the time of the contract award.

Paragraph 3 further states that the claimant was instructed by the Labor Conciliator to raise the wages to meet the increase. We agree that this is a true statement of the facts.

It is further correct that in view of the adamant position of the PWA Labor Conciliator in warning English Brothers not to take any appeal from his decision, that this department having in mind the stipulation of the Grant Agreement wherein PWA agreed to give the State 45% of the cost of the project providing the State abided by the terms of the Agreement, suggested that English Brothers meet the increased wage scale, in order that the Grant to the State would not be jeopardized, as was threatened by the Labor Conciliator. The claimant further states in this paragraph that additional increases in wages were approved under the direction of the Labor Conciliator, and that the same procedure of acceptance of the situation as above described, was again recommended by the State, in order that the PWA Grant to the State would not be jeopardized or withdrawn. In view of the fact that there were not sufficient State funds available that biennium to allow the contractor extras to cover the additional expense imposed after the contract was awarded, this department feels that the claim of English Brothers is logical and just. This recommendation agrees with the claimant's statement, as outlined in Exhibit D, namely, a total claim for extra labor, of $31,391.69."

The said report recommends that favorable consideration be given to the "allowance of $31,391.69 for the loss and damage sustained by the claimant due to increased wages beyond those established and advertised in the State's invitation to bidders."

By stipulation filed herein, claimant has offered to settle the said claim of $119,709.04 upon allowance to the claimant of the amount of $31,391.69.

It is further stipulated that "the said proposal of settlement is, in the opinion of the Attorney General, fair and equitable to the claimant and to the People of the State of Illinois."

The said stipulation filed herein further provides:

"It Is Further Stipulated and Agreed by and between the parties hereto that the above entitled claim of claimant against the State of Illinois shall be settled by the allowance to claimant of the sum of $31,391.69 in full settlement of all claims against the State of Illinois arising out of the said contract dated December 20, 1933; and

It Is Further Stipulated and Agreed by and between the parties that said claimant is justly entitled to and should receive in these proceedings

in the Court of Claims of the State of Illinois said sum of $31,391.69; that this stipulation be filed of record in these proceedings and that a judgment be entered in these proceedings in favor of claimant for the sum of $31,391.69."

No jurisdictional questions are involved, and there appears to be little for this court to consider. The claim is sustained by the evidence and, in addition, the material facts are admitted. The Division of Architecture and Engineering admits that the claim is proper and justly due, and recommends payment thereof. The Attorney General stipulates that claimant is entitled to and should receive the sum of $31,391.69 in full payment of the claim. The stipulation appears to be in accordance with the facts and the law applicable thereto.

An award is therefore entered in favor of claimant, R. E. English, an individual, trading under the style of English Brothers, for the sum of Thirty-one Thousand Three Hundred Ninety-one Dollars and Sixty-nine Cents ($31,391.69).